IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF
MICHAEL EARLY, BY TAKING BUCCAL
SWABS



## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT/ORDER

STATE OF NEW YORK )
COUNTY OF ERIE    )  ss:
CITY OF BUFFALO   )

**ANTHONY M. BRUCE**, Assistant United States Attorney, Buffalo, New York, being first duly sworn, deposes and states:

1.    I am giving this affidavit in support of a warrant, in the form of an Order, to search one Michael Early (Black Male, 5'11," approximately 150 pounds), for evidence of a violation of 18 U.S.C. § 922(g), possession of firearm in commerce by a convicted felon, namely his DNA, to be scraped from the inside of his cheeks using "buccal swabs"[1] to be used for comparison with unknown DNA on items recovered by the Buffalo police as hereafter described.

---

[1]The procedure involves, in essence, swabbing the inside of the subject's cheeks with cotton swabs that resemble Q-tips in order to obtain epithelial cells that can then be analyzed for the subject's DNA. Once that DNA is analyzed, it can used as the "known" or "known sample" to be compared with DNA found somewhere else, in this case, the .40 caliber Glock found in the Chrysler Aspen suburban as described herein.

2.    On March 4, 2004, Michael Early was convicted[2] (by plea) of attempted assault 1st: intent to cause serious injury with a weapon, a violation of N.Y. Penal Law § 120.10 and 110.00, a felony carrying a penalty of 3½ to 15 years. Based on this he is a "prohibited person" and any possession by him of a firearm in commerce would be a violation of 18 U.S.C. § 922(g).

3.    At approximately 10:30 p.m. on March 28, 2013, Buffalo Police Officers Michael Aquino and Mark Hamilton, while on routine patrol, observed two males, Michael Early and Karon Slaughter, on the street in front of 80 Barthel, in the City of Buffalo standing in front of a blue 2008 Chrysler Aspen 2 door suburban, NY Reg GAZ 9193. As the officers pulled up with Early and Slaughter standing in the street, Slaughter looked at them and then turned and walked away to the passenger side of the vehicle with his right hand concealed in his waistband. Slaughter opened the passenger door and then leaned into the car with his chest against the seat and reached under the front passenger side. He said to the driver of the vehicle, one Dewayne L. Green, "we gotta go in the house." Slaughter locked the door and walked away from the Chrysler Aspen suburban. Police Officer Hamilton then observed Green in the driver's seat, apparently under the influence of narcotics, and

---

[2]What follows is based on my review of Early's criminal history which reflects that it was based on a fingerprint check.

removed him from the vehicle. Upon further inspection, Slaughter, Early and Green were found to have in their possession and under their control a loaded Black .40 caliber Glock handgun, Serial Number: CLR187, Model Number: 22. The gun was loaded with seven live cartridges with one in the chamber and six in the magazine. The weapon was found underneath the passenger side seat of the Chrysler Aspen and was recovered by Officer Acquino.

4.    As Officers Hamilton and Acquino continued in their investigation, they placed Early, Green and Slaughter in the middle of the street in the custody of other officers who were at the scene.  During this period, Officer Hamilton could not hear what Slaughter was saying to Green but heard Green say "I'm not takin it for you, no man I'm not," which Hamilton took to mean that Slaughter, the convicted felon, had asked Green to (falsely) admit the .40 caliber Glock was his so that Slaughter could hopefully escape prosecution.

5.    Information provided by Special Agent Thomas Rodriguez of the Bureau of Alcohol, Tobacco, Firearms and Explosives establishes that the aforementioned .40 caliber Glock manufactured either in Austria and shipped to the United States for assembly (in Georgia) or made and assembled in Austria and shipped to the United States thus establishing the "in commerce" element of § 922(g).

3

6.    As noted above, both Slaughter and Early were in the vicinity of the Chrysler Aspen when officers Acquino and Hamilton arrived. Slaughter then engaged in actions consistent with hiding the .40 caliber Glock in the Chrysler Aspen. He then said to Green "we gotta go in the house," indicating that they were together (and also likely with Early).

7.    The fact that Slaughter, Early and Green were together combined with the fact that Slaughter took actions consistent with hiding the .40 caliber Glock under the front seat of the vehicle establishes probable cause to believe that the three men may have been in possession of the .40 caliber Glock, and by extension left DNA on it.

8.    Based on the foregoing, a sample of Michael Early's DNA is necessary in order to positively link him with the .40 caliber Glock in order to establish a violation of §922(g) by him and it is requested that the Court issue the attached Order requiring him to

provide that DNA to federal agents so that it can be determined if Early possessed the Glock.

ANTHONY M. BRUCE
Assistant United States Attorney
Western District of New York

Sworn to before me this
8th day of April, 2013.

Hon. Hugh B. Scott
United States Magistrate Judge

5